**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JEROME LEMOND,

       Plaintiff,

                                                   Case No. 10-10846

v.                                                         Hon. Lawrence P. Zatkoff

AMERICAN FREIGHT OF
MICHIGAN, INC.,

       Defendant.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on October 26, 2011.

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
                      UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter comes before the Court on Defendant's Motion for Summary Judgment [dkt 19]. The parties fully briefed the Motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L. R. 7.1(f)(2), it is hereby ORDERED that the Motion be resolved on the brief submitted. For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED.

## II. BACKGROUND

The present case involves claims brought against American Freight of Michigan, Inc. ("Defendant") by former employee Jerome Lemond ("Plaintiff"), who filed an amended two-count Complaint alleging: (Count I), age and race discrimination based on a hostile work environment

under Michigan's state-law Elliott Larsen Civil Rights Act ("MCRA"), Mich. Comp. Laws § 37.2101, *et seq.*; and (Count II), age discrimination and hostile work environment under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*[1]

Defendant is a retailer of household furniture, mattresses, and related goods. On February 3, 2009, Plaintiff was hired by Defendant to assemble furniture at Defendant's location in Troy, Michigan. At that time, Plaintiff, a Caucasian male, was 50 years old. Defendant closed its Troy location a few weeks after Plaintiff started and transferred Plaintiff to Defendant's location in Ann Arbor, Michigan. According to Plaintiff, between May 5, 2009, and May 25, 2009, he was harassed by four employees of Defendant at the Ann Arbor location:

(1) Adrian Patterson, an African American co-worker, who is approximately 20 years old;

(2) John Covington, an African American co-worker, who is approximately 20 years old;

(3) Corey Greer, the store manager, who is an African American and approximately 31 years old; and

(4) Tony Dawkins, the territory manager, who is an African American and approximately 34 years old.

## A.  PATTERSON'S ALLEGED CONDUCT

Plaintiff alleges that Patterson made verbal comments to him, such as:

(1) "Get out of my way or I'll kick the wrinkles out of your ass.";

(2) "I'll break your hip.";

(3) Called Plaintiff "Dom DeLuise"; and

---

[1] Plaintiff's amended Complaint, while not set forth in a separate count, also includes a claim of constructive discharge due to the alleged harassment under both the MCRA and the ADEA.

>  (4) Told Plaintiff he had "women's titties," which Plaintiff believed was directed toward him because his shirt was tight.

Plaintiff also alleges that Patterson engaged in the following harassing conduct:

> (a) Patterson and Dawkins threw several throw pillows from a showroom couch at Plaintiff while he was standing approximately twenty to thirty feet away, which Plaintiff responded by throwing pillows back at Patterson;
>
> (b) Patterson hit Plaintiff in the back of the head and shoulders with an extra large pillow; and
>
> (c) Patterson slapped Plaintiff on the back of the head because Plaintiff ignored Patterson's request for tape. Plaintiff first testified in his deposition that after this incident, Patterson and Covington told Plaintiff they would "kick his ass" if Plaintiff reported it to Dawkins. Plaintiff, however, later testified that Dawkins witnessed the incident and told Patterson to apologize to Plaintiff.

After these verbal comments and allegedly harassing conduct, Plaintiff neither recalls reporting the activity to anyone nor leaving work early.

### B.  COVINGTON'S ALLEGED CONDUCT

> Plaintiff alleges that Covington made verbal comments to him, such as:
>
> (1) "You're half dead.";
>
> (2) "You have old woman titties.";
>
> (3) Called Plaintiff "Dom DeLuise"; and
>
> (4) "Get your old ass out of the way."

Plaintiff did not report Covington's verbal comments to anyone. Plaintiff also alleges that Covington once hit Plaintiff on both sides of his ears with pieces of styrofoam. After the incident, Plaintiff states that he reported it to Dawkins.

### C.  GREER'S ALLEGED CONDUCT

> Plaintiff alleges that Greer made verbal comments to him, such as:

3

(1) "You're half dead.";

(2) I will "kick [your] teeth out.";

(3) Called Plaintiff "Dom DeLuise";

(4) Told Plaintiff he had "women's titties," which Plaintiff believed was directed toward him because his shirt was tight; and

(5) On several occasions, Greer stated to customers to "watch out for this guy, he likes little kids."

According to Plaintiff, Greer also observed most of the comments and conduct done by Patterson and Covington, but did not respond.

### D. DAWKIN'S ALLEGED CONDUCT

According to Plaintiff, Dawkins was involved in the initial pillow fight with Patterson and Plaintiff. Dawkins, however, apparently did not witness most of the comments or conduct by Patterson, Covington, or Greer.

### E. DEFENDANT'S RESPONSE TO THE ALLEGED CONDUCT

While Plaintiff fails to identify a specific time, at some point during the period of May 5, 2009, to May 22, 2009, he complained to Covington, Greer, and Dawkins about the physical conduct initiated by Patterson. On approximately May 22, 2009, Dawkins submitted a summary memorandum to Defendant's Human Resources Department and Defendant's Regional Manager, Asaph Rink. The summary memorandum, which was placed in the personnel files of Plaintiff and Patterson, details the incident between them:

> On May 21 09 [Plaintiff] and [Patterson] were horseplaying around in the warehouse. [Plaintiff] hit [Patterson] several times with a pillow. Later [Patterson] hit [Plaintiff] in the head with some packing material. Then [Plaintiff] threw a calculator at [Patterson]. [Plaintiff] came to me about the incident on the next day 22 may 09 during my visit. I told him that I would take care of it and the horseplay had to stop. Previous to this there had been numerous times that [Plaintiff]

> and the warehouse personnel cracked jokes back and forth. [Plaintiff] never once displayed to myself nor Corey Greer that he had a problem or that he felt uncomfortable with the situation. The workplace is no place for all the games and horseplay. Any further occurrences will result in corrective action up to termination.

Def.'s Mot. Summ. J., Mundy Aff. Ex. 2, dkt 19.

On approximately May 23 or 24, 2009, Plaintiff called Rink to report that he had been "assaulted" by co-workers at the store, and that he had been subjected to harassing comments from his co-workers. Plaintiff requested a transfer to Defendant's Livonia location, but Rink informed Plaintiff that there were no openings there. Rink told Plaintiff he would meet him at the Ann Arbor location the next morning to discuss the matter in further detail. According to Rink, he then called his immediate supervisor, Defendant's Vice President of Sales, Joe Frost. Frost told Rink to immediately investigate Plaintiff's complaint.

The following day, Rink arrived at the Ann Arbor location to meet with Plaintiff. Plaintiff, however, never met Rink at the store, so Rink called Plaintiff to participate in a conference call. According to Plaintiff, he was put on a conference call with Rink, Frost, Greer, Patterson, and Covington. Rink informed Plaintiff that a transfer was unavailable, and Plaintiff reiterated that he was being harassed at work. Before any further discussion, the call was abruptly terminated. Plaintiff claims his phone ran out of power, while Rink and Frost claim that they heard Plaintiff state he "had to go," and then they heard only dial tone.

After the conference call, Defendant did not have any contact with Plaintiff until he received his final paycheck several days later. Because Plaintiff failed to report for his scheduled shifts and told Defendant's nothing regarding whether he was returning to work, Defendant concluded on approximately May 27, 2009, that he quit his employment.

**F. DEFENDANT'S COMPANY POLICIES**

Defendant maintains an employee manual that addresses policies and procedures designed to prevent unlawful discrimination and harassment. The manual is distributed to all new employees and a copy is available at each of Defendant's store locations. The manual contains Defendant's Sexual and Other Unlawful Harassment Polic,y which provides in part:

> Any employee who wants to report an incident of sexual or other unlawful harassment should promptly report the matter to his or her supervisor. If the supervisor is unavailable or the employee believes it would be inappropriate to contact that person, the employee should immediately contact the President. Employees can raise concerns and make reports without fear of reprisal. Any supervisor or manager who becomes aware of possible sexual or other unlawful harassment should promptly advise the President, who will investigate the matter in a timely and confidential manner.

Def.'s Mot. Summ. J., Mundy Aff. Ex. 1, dkt 19. In addition to the policies in the manual, according to Rink and Frost, employees are assured that they may report any workplace concerns to anyone in management with whom they feel comfortable. To report such concerns, employees have access to a list of management phone numbers, including the number of Defendant's President.

**G. PROCEDURAL BACKGROUND**

On August 27, 2009, Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") in which he alleged the same harassing conduct of his co-workers as set forth above. Plaintiff alleged that this conduct amounted to age discrimination and that he was constructively discharged due to his age in violation of the ADEA. On May 25, 2010, the EEOC concluded its investigation, dismissing Plaintiff's complaint and issuing a Notice of Suit Rights. Plaintiff's Complaint was removed from the Washtenaw County Circuit Court. Plaintiff filed an amended Complaint on August 23, 2010. After completion of discovery, Defendant filed the instant Motion for Summary Judgment. Defendant seeks summary judgment on all of Plaintiff's

claims.

### III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323. The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material

facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

Plaintiff's amended Complaint asserts two counts:

Count I—age and race based hostile work environment under the MCRA; and

Count II—age based hostile work environment under the ADEA.[2]

The Court will turn to Plaintiff's federal claims (Count II) first.[3]

### A.  ADEA (COUNT II): HOSTILE WORK ENVIRONMENT

To establish a hostile work environment claim, a plaintiff must show:

1. The employee is 40 years old or older;

2. The employee was subjected to harassment, either through words or actions, based on age;

3. The harassment had the effect of unreasonably interfering with the employee's work performance and creating an objectively intimidating, hostile, or offensive work environment; and

4. There exists some basis for liability on the part of the employer.

---

[2]As previously noted, Plaintiff's amended Complaint also asserts a claim of constructive discharge in both Counts I and II.

[3] Defendant raises as a threshold matter that the Court lacks jurisdiction over any alleged discriminatory acts based on Plaintiff's race. Defendant, however, later concedes in his reply brief that he agrees with Plaintiff that the Court has jurisdiction over Plaintiff's race-based hostile work environment claim under the MCRA. The Court finds the parties' conclusion is correct and will review both counts of Plaintiff's Complaint.

*Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834–35 (6th Cir. 1996).

Defendant asserts it is entitled to summary judgment because Plaintiff fails to satisfy the second, third, and fourth prong set forth in *Crawford*.[4] After reviewing the parties' papers, the Court finds, even assuming that Plaintiff could establish the second and third prong in *Crawford*, no rational jury could find that Plaintiff establishes liability on the part of Defendant (the fourth prong) for the reasons discussed below.

In this case, Plaintiff's allegations include verbal comments and conduct by both co-workers and supervisors. These allegations require the Court to review two grounds for Defendant's liability. First, as to an employer's liability for a co-worker's harassment, the plaintiff must prove that his employer "tolerated or condoned the situation" or knew or should have known of the alleged conduct but failed to take appropriate remedial action. *See Hafford v. Seidner*, 183 F.3d 506, 513 (6th Cir. 1999) (quoting *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 23 (1993)). Second, as to an employer's liability for a supervisor's harassment of a subordinate, the employer is subject to vicarious liability for a hostile work environment created by that supervisor. *See id.* However, when no tangible employment action is taken, as is the case here, the employer may assert as an affirmative defense that it exercised reasonable care to prevent and correct the abusive behavior, and that the employee unreasonably failed to avail himself of available preventive or corrective measures. *See id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 806 (1998)).

Plaintiff argues that store manager Greer and district manager Dawkins knew about the discrimination by Covington and Patterson and thereafter Defendant took no action to correct it. Plaintiff also points to incidents where Greer witnessed Plaintiff being harassed and where Greer

---

[4]Defendant does not dispute that Plaintiff satisfies the first prong.

9

and Dawkins were involved. Plaintiff concludes that Defendant had knowledge that Plaintiff was being harassed by the conduct of his co-workers and supervisors, and thus, Defendant violated the ADEA when it failed to respond.

**1. Co-workers' Alleged Harassment Not Basis for Defendant's Liability**

Here, no reasonable jury could find that Defendant either "tolerated or condoned the situation" or knew or should have known of the alleged conduct but failed to take appropriate remedial action. *See Hafford*, 183 F.3d at 513.

As to whether Defendant "tolerated or condoned the situation," Defendant has a policy in place against harassment as indicated in its employee manual. The manual ensures employees that they can raise concerns about discrimination at any time without fear of retaliation. Plaintiff even signed an Acknowledgment of Receipt and Understanding, confirming that he received, read, and understood the information in the employee manual. In addition to the formal policies in the manual, Rink and Frost's undisputed testimony show that Defendant has an informal policy for employees to report any workplace concerns to anyone in management with whom they feel comfortable. To effectuate this policy, employees are provided access to a list of management phone numbers, including the number of Defendant's President.

In addition, after Plaintiff complained to Dawkins about Patterson, Dawkins submitted a summary to Human Resources and Rink. The summary indicated that the conduct had been investigated and addressed, concluding that Plaintiff and Patterson were involved in "horseplay." Nothing in the summary indicates that any of the conduct was based on discrimination. The summary also stated any future conduct will result in corrective action, including termination.

Moreover, Defendant took immediate action after Plaintiff complained to Rink. Rink

reported the complaint to Frost, of which Frost instructed Rink to immediately investigate. In response, Rink scheduled a meeting with Plaintiff the following day at the Ann Arbor location. Such actions by Defendant do not establish that it "tolerated or condoned" the alleged harassment.

The evidence is also insufficient for a reasonable jury to find that Defendant knew or should have known of the alleged conduct but failed to take appropriate remedial action. The only alleged conduct Defendant may have been aware of was Plaintiff's complaint to Dawkins and the phone call to Rink. Plaintiff does not allege that he reported or filed any complaint with respect to the other alleged incidents that occurred from May 5, 2009, to May 25, 2009.

As to the complaint to Dawkins and the phone call to Rink, Defendant took appropriate remedial action. With respect to the complaint to Dawkins, in light of Dawkins' summary stating that Plaintiff and Patterson were involved in games and "horseplay," the response to this first incident was to place the summary in each employee's personnel file and allow Dawkins to use corrective action after any future conduct was reasonably calculated to end the "horseplay." There was no indication in the summary the conduct was frequent or severe or even involved any discrimination. *See Jackson v. Quanex Corp.*, 191 F.3d 647, 663 (6th Cir. 1999) ("[A] court must judge the appropriateness of a response by the frequency and severity of the alleged harassment. Generally, a response is adequate if it is reasonably calculated to end the harassment.") (citations omitted).

Furthermore, Plaintiff's allegations are based on conduct spanning only twenty days (May 5, 2009, to May 25, 2009). According to Plaintiff, Patterson's comments to Plaintiff to "get out of my way or I'll kick the wrinkles our of your ass" and "I'll break your hip" were made on one occasion between May 10 to May 15. Plaintiff neither responded to the comments nor attempted

to leave work earlier due to the comments. While Patterson and Covington also called Plaintiff "Dom DeLuise" and stated that he had "women's titties," Plaintiff testified during a deposition that he believed the comments were directed toward him because his shirt was tight. Plaintiff also testified that Patterson threw pillows at him, however, Plaintiff also threw some pillows. Even Plaintiff testified that he perceived some of the alleged harassment as mere "goofing off."

Moreover, Plaintiff testified that the conduct of Patterson and Covington was not focused on only Plaintiff. Plaintiff also witnessed Patterson and Covington engage in the same behavior between themselves, stating they would "just play around and throw pillows . . . while they were putting the sofas . . . in place." Plaintiff also witnessed Dawkins throw pillows at Patterson and Covington on two to four occasions between May 15 and May 25, 2009. As such, the frequency and severity of the alleged harassment are minimal. *See Id.* at 663 (holding that a corporate defendant knew or should have known of the alleged harassment where the plaintiff reported some of the instances to management, other employees reported the harassment to management, and the harassment was "pervasive" in areas commonly used by employees and supervisors).

In addition, observation of the events by Dawkins and Greer does not impute knowledge to Defendant that Plaintiff was the target of any harassment, as Plaintiff contends. Even assuming Plaintiff complained to Dawkins about Greer, Plaintiff alleges that Dawkins and Greer were involved in the allegedly harassing conduct. A similar situation occurred in *Nielsen v. Acorn Corrugated Box Co.*, Case No. 01 C 1988, 2002 U.S. Dist. Lexis 15473, at *14 (N.D. Ill. Aug. 21, 2002). In *Nielsen*, the district court reviewed a corporate defendant's policies, which provided that an employee subject to sexual harassment should contact a designated person or any other member of management that the complaining employee felt comfortable contacting. *Id.* The plaintiff

asserted that because she made oral and written complaints to her supervisor, the corporate defendant had knowledge. The district court determined that "it would be unreasonable to believe that [her supervisor] would forward a complaint of sexual harassment against himself to company management." *Id.* This Court agrees with the rationale in *Nielson*. It is unreasonable to assume that complaining to Greer or Dawkins, or their observation of the harassment they also participated in, would result in Greer or Dawkins informing Defendant and its other management about the allegedly harassing behavior. *See Parkins v. Civil Constructors of Ill. Inc.*, 163 F.3d 1027, 1037 (7th Cir. 1998) (finding it would be unreasonable to expect a plaintiff's complaint of sexual harassment to her foreman against that foreman to be transmitted to the defendant's management). Thus, the Court finds that no reasonable jury would conclude that Defendant either knew or should have known that Patterson or Covington were engaged in harassing conduct. Accordingly, Plaintiff fails to establish that Defendant is liable based on the conduct of Plaintiff's co-workers (Patterson and Covington).

## 2. Supervisors' Alleged Harassment Not Basis for Defendant's Liability

The Court finds, even assuming that Dawkins and Greer unlawfully harassed Plaintiff, that a reasonable jury would only find that Defendant exercised (a) reasonable care to prevent such harassment and (b) reasonable care to correct such harassment, and (c) Plaintiff unreasonably failed to avail himself of available preventive or corrective measures. *See Hafford*, 183 F.3d at 513.

### *(a) Reasonable Care to Prevent Harassment*

As discussed above, Defendant maintains a Sexual and Other Unlawful Harassment Policy that prohibits discrimination and harassment based on age and race. Defendant's harassment policy states, "Any employee who wants to report an incident of sexual or other unlawful harassment should promptly report the matter to his or her supervisor. If the supervisor is unavailable or the

employee believes it would be inappropriate to contact that person, the employee should immediately contact the President." It further provides "[a]ny supervisor or manager who becomes aware of sexual or other unlawful harassment should promptly advise the President, who will investigate the matter in a timely and confidential matter." In addition, Defendant's EEOC policy provides that "[a]ny employee with questions or concerns about any type of discrimination in the workplace are encouraged to bring these issues to the attention of their immediate supervisor." Furthermore, according to Rink and Frost's undisputed testimony, Defendant maintains an informal policy to report any harassment, of which Plaintiff was aware, as exhibited by his complaints to Dawkins and Rink. Plaintiff provides insufficient evidence that Defendant did not take reasonable care to prevent employee harassment.

*(b) Reasonable care to Correct Harassment*

The evidence also establishes that Defendant took reasonable care to correct the alleged harassment in this case. After Plaintiff complained to Dawkins about Patterson, Dawkins investigated the allegations. Dawkins concluded that the conduct between Plaintiff and Patterson was "horseplay." Dawkins submitted a summary to Defendant's Human Resources indicating to Defendant that the conduct had been investigated and addressed, and amounted to nothing more than "horseplay." The summary was placed in Plaintiff and Patterson's personnel files with no further action. As discussed in Subsection A.1, *supra*, a reasonable jury would conclude that Defendant took "reasonable care" in response to the conduct alleged in the summary.

On or about May 23, 2009, it is undisputed that Rink took immediate action in response to Plaintiff's phone call. After receiving the call, Rink reported the call to his immediate supervisor Frost. Rink then drove from Indiana to the Ann Arbor location to meet with Plaintiff the following

14

morning. The parties do not explain in the record why Plaintiff never met Rink at the Ann Arbor location, but, it is undisputed that Rink then called Plaintiff. Although the parties dispute whether Covington, Greer, and Patterson were also involved in the conference call, the Court finds this immaterial. Because the call was abruptly terminated, either due to a dead battery as Plaintiff contends or due to Plaintiff's unwillingness to cooperate as Defendant contends, Plaintiff fails to show that Covington's, Greer's, or Patterson's alleged involvement in the conference call amounts to unreasonable care. The fact that Rink responded in less than 24 hours to meet with Plaintiff in person at the Ann Arbor location, then when that failed, initiated a conference call with Plaintiff to discuss the alleged harassment, amounts to "reasonable care" on behalf of Defendant to correct the alleged harassment. *See id.* at 664 (finding that merely giving a reprimand was not appropriate remedial action when the record contained *substantial* evidence showing that management was aware of the fact that a supervisor regularly discriminated against African-American workers).

### *(c) Plaintiff Unreasonably Failed to Avail Himself of Available Corrective Measures*

Viewing the evidence in favor of Plaintiff, a reasonable jury would not find that Plaintiff reasonably availed himself of the available corrective measures regarding Dawkins' and Greer's alleged harassment. Defendant's policy provides a procedure for bypassing a harassing supervisor when making a complaint. Plaintiff presumably started using this procedure when he contacted Rink. Plaintiff, however, failed to reasonably cooperate with Rink and Defendant. Although disputed by the parties, Plaintiff testified that the conference call terminated when his phone died. Assuming this is true, it was unreasonable for Plaintiff to not return Rink's call once Plaintiff was able, such as by either charging his phone or locating another. He then proceeded to quit his employment without notifying Defendant and before Defendant had an opportunity to further

investigate his complaint. As such, a reasonably jury would only find that Plaintiff's actions in this regard demonstrate that he unreasonably failed to take advantage of Defendant's corrective opportunities. Therefore, having determined Defendant took reasonable care to prevent and promptly correct any harassing behavior, Defendant is not vicariously liable for any alleged harassment on the part of Greer or Dawkins.

### 3. Conclusion

For the reasons set forth above, Plaintiff fails to show that Defendant is liable for the alleged harassment by Plaintiff's co-workers and supervisors. As such, Plaintiff's hostile work environment claim under the ADEA fails as a matter of law. Defendant is granted summary judgment with respect to Plaintiff's age-based hostile work environment claim under the ADEA.

### B.   ADEA (COUNT II): CONSTRUCTIVE DISCHARGE

Plaintiff also asserts that she was constructively discharged due to the alleged hostile work environment. A plaintiff must establish two elements to maintain a constructive discharge claim: (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person; and (2) the employer had the intent to force the employee to quit. *Logan v. Denny's, Inc.*, 259 F.3d 558, 568–69 (6th Cir. 2001) (citation omitted).

This case lacks any evidence that Defendant deliberately created intolerable working conditions or had an intent to force Plaintiff to quit. Rather, Defendant's reaction to Plaintiff's complaint to Rink belies any indication on the part of Defendant to force Plaintiff to quit. Defendant immediately began investigating Plaintiff's complaint to Rink. Rink scheduled a meeting with Plaintiff the following day. When the meeting failed, Rink called Plaintiff to address the situation. Plaintiff then voluntarily decided to not appear for his scheduled hours. Thus, no reasonably jury

could find in favor of Plaintiff. *See Lindsey v. Whirlpool Corp.*, 295 Fed. Appx. 758, 771 (finding that a plaintiff's own testimony indicated that a defendant employer sought to correct each one of the racially intolerable working conditions that the plaintiff brought to the defendant employer's attention). Accordingly, Plaintiff's constructive discharge claim fails as a matter of law, and Defendant is granted summary judgment with respect to Plaintiff's constructive discharge claim.[5]

### C.     MCRA (COUNT I): HOSTILE WORK ENVIRONMENT

Plaintiff also asserts a claim under the MCRA similar to his claim under the ADEA. The only difference is that Plaintiff also bases his hostile work environment claim on age and race discrimination, as opposed to only asserting his hostile work environment claim under the ADEA on age discrimination. The standards to analyze a hostile work environment claim under the MCRA are similar to the standards under the ADEA and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*[6] Under the MCRA, however, an employer may be held liable for the creation of a hostile work environment only if it "failed to take prompt and adequate remedial action after having been reasonably put on notice of the harassment." *Chambers v. Trettco, Inc.*, 614 N.W.2d 910, 915–16 (Mich. 2000). For the reasons explained in Part A, *supra*, the Court finds there is no genuine dispute of fact that Defendant took "prompt and adequate remedial action" after Plaintiff

---

[5] In the Sixth Circuit, the standard applied to a claim of constructive discharge under federal law is the same as a claim of constructive discharge under the MCRA. *See Agnew v. BASF Corp.*, 286 F.3d 307, 309 (6th Cir. 2002). As such, to the extent Plaintiff asserts a constructive discharge claim under the MCRA, Defendant is granted summary judgment on the claim for the same reasons the Court finds Plaintiff's claim under the ADEA fails as a matter of law.

[6] As set forth in Part A, a plaintiff must show: (1) The employee is 40 years old or older; (2) The employee was subjected to harassment, either through words or actions, based on age; (3) The harassment had the effect of unreasonably interfering with the employee's work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) There exists some basis for liability on the part of the employer. *Crawford*, 96 F.3d at 834–35.

complained to Dawkins and Rink. *See Hall v. Sky Chefs, Inc.*, Case No. 09-10637, 2011 U.S. Dist. LEXIS 29428, *33–34 (E.D. Mich. Mar. 22, 2011) (applying the same standards under the MCRA and Title VII of the Civil Rights Act of 1964).  As such, Plaintiff fails to maintain a claim for age-based and race-based hostile work environment under the MCRA, and Defendant is granted summary judgment with respect to this claim.

## V. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [dkt 19] is GRANTED.

IT IS FURTHER ORDERED that, because this resolves all of Plaintiff's claims in his Complaint, Plaintiff's Complaint is DISMISSED WITH PREJUDICE and this case is now closed.

IT IS SO ORDERED.

    S/Lawrence P. Zatkoff
    LAWRENCE P. ZATKOFF
    UNITED STATES DISTRICT JUDGE

Dated:  October 26, 2011

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on October 26, 2011.

    S/Marie E. Verlinde
    Case Manager
    (810) 984-3290